**Harvey HARDMAN, Plaintiff–Appellant,**

v.

**UNIVERSITY OF AKRON, Defendant–Appellee.**

No. 00–3837.

United States Court of Appeals, Sixth Circuit.

July 1, 2002.

---

Before MARTIN, Chief Circuit Judge; CLAY, Circuit Judge; and GARWOOD, Circuit Judge.*

PER CURIAM.

Plaintiff Harvey Hardman appeals the district court's grant of summary judgment to defendant University of Akron on his procedural due process and reverse discrimination claims. We AFFIRM.

I.

On the morning of July 1, 1997, Hardman, a University custodian, was in the break room when his supervisor, Tilford Pickett, entered the room. Pickett attempted to engage Hardman in conversation, but before he could speak, Hardman cursed at him and sprung up from his chair. Pickett alleged that Hardman threw a pop can at him, but Hardman testified that the almost empty can was thrown at a box, not at Pickett. In response, Pickett ordered Hardman to his office, but Hardman refused and left the room. Two hours later, Pickett again ordered Hardman to his office and Hardman again refused.

In response to this incident, the University held a disciplinary hearing on July 22, 1997. Hardman had union representation at the hearing and acknowledged that he

---

* The Honorable William L. Garwood, Circuit Judge of the United States Court of Appeals for the Fifth Circuit, sitting by designation.

was allowed to speak, but remained silent, allowing his union representative to speak on his behalf.

After the hearing, the University suspended Hardman for five days without pay. In a letter dated July 25, 1997, the University warned Hardman that if he engaged "in similar conduct in the future it will result in a recommendation to terminate your employment with the University."

On August 15, 1997, Hardman, a Caucasian, was involved in an altercation with Stanley Johnson, an African–American senior custodian. According to Hardman, a senior custodian had the authority to direct his work, but did not have authority over work assignments. Hardman claims that when he exited the elevator in the residence hall basement, Johnson told him that they were going to work together the remainder of the day. In response, Hardman complained that he had not been informed and told Johnson, "Fuck it, I have my own floors." When Johnson approached a second time, Hardman responded, "I told you fuck you, I'm doing my own floors."

Hardman testified that after he returned to the basement, Johnson was waiting for him. According to Hardman, Johnson attacked him with a piece of wood. Four other custodial workers eventually arrived and separated Johnson and Hardman.

After this incident, Hardman's co-worker, Davis Oden, allegedly talked with witnesses to the incident. Oden claims that the witnesses, all of whom were African–American, told him that Hardman was in a defensive position during the altercation, but that they told the University a different version to protect Johnson. According to Oden, they were protecting Johnson because it was a "black thing."

On August 22, 1997, the University held a second disciplinary hearing. Hardman acknowledged he had the right to speak at the hearing, but that he accepted the advice of his union representative and declined to speak. The University found that Hardman's conduct on August 15 constituted "gross insubordination" and subsequently terminated his employment.

## II.

This Court reviews a district court's grant of summary judgment *de novo.* *Gribcheck v. Runyon,* 245 F.3d 547, 549 (6th Cir.2001).

## A.

■ The University does not contest Hardman's property right in continued University employment, therefore, Hardman's due process claim turns on whether the University accorded him sufficient process. Generally, due process requires a pre-deprivation hearing that provides notice of the charges and an opportunity to respond to those allegations. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). After both incidents, the University notified Hardman of the charges against him, accorded him a hearing with union representation, and allowed him to speak on his own behalf. Therefore, the University accorded Hardman sufficient process before it terminated his employment.

■ Hardman also argues that he is entitled to a post-deprivation hearing, asserting that once the University learned that the witness accounts of the altercation were allegedly untruthful, it had an obligation to accord him additional process. This argument fails, however, because the University terminated Hardman for "gross insubordination," which Hardman does not contest, not for fighting. Thus, whether

Johnson or Hardman started the physical altercation is irrelevant.

### B.

Section 1981 prohibits racial discrimination in the making and enforcing of private contracts. 42 U.S.C. § 1981. In indirect evidence cases, claims under Section 1981 are analyzed under the familiar *McDonnell Douglas* framework. *Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). To establish a *prima facie* case of reverse discrimination, a plaintiff must show that (1) "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority," [citations omitted] and (2) "that the employer treated differently employees who were similarly situated but not members of the protected class." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 801 (6th Cir.1994) (citations omitted). In order to constitute "similarly situated" in the disciplinary context, a plaintiff must show that "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998).

Hardman fails to put forth sufficient evidence to establish a *prima facie* case of reverse discrimination because he offers no evidence suggesting the University discriminated against the majority. Moreover, Hardman and Johnson were not "similarly situated" because (1) Johnson was a senior custodian; (2) Johnson had not been previously disciplined for insubordination; and, (3) Johnson was not on no-

tice that he would be terminated for future insubordinate conduct.

Hardman also argues that Oden's affidavit constitutes direct evidence of discrimination. Oden's affidavit, which recounts the alleged statements of the four witnesses to the Hardman–Johnson brawl, cannot be considered on summary judgment, however, because it is hearsay. *Jacklyn v. Schering–Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 927 (6th Cir.1999). Although Hardman asserts that the statements of the temporary custodians are admissions of a party opponent, there is no evidence that these temporary employees were authorized by the University to make statements on its behalf. *See Hill v. Spiegel, Inc.*, 708 F.2d 233, 237 (6th Cir.1983).

### C.

Notwithstanding numerous scheduling extensions, Hardman's counsel now complains about the district court's scheduling order. But because Hardman did not object to this order below, he may not raise this challenge on appeal. *Shearson/American Express, Inc. v. Mann*, 814 F.2d 301, 305 (6th Cir.1987).

### III.

For the foregoing reasons, we AFFIRM the judgment of the district court.